**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RYAN D. BOWER**
Allen Allen & Brown
Salem, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF K.H., | ) | |
| S.H., (Mother), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  59A01-1205-AD-212 |
| | ) | |
| W.B. and B.B., (Guardians), | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable R. Michael Cloud, Judge
Cause No.  59C01-1002-AD-1

**December 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

S.H. ("Mother") appeals the denial of her motion to correct error, which challenged the adoption of Mother's biological daughter, K.H. Mother presents a single issue for review: whether there was sufficient evidence to support the trial court's grant of the adoption petition without Mother's consent. We affirm.

## Facts and Procedural History

Mother gave birth to K.H. in 1996. In 1998, Mother agreed to place K.H. in the guardianship of Mother's cousin and his wife (hereinafter, "the Guardians"). Ten years later, Mother petitioned to terminate the guardianship. By that time, it had been eight years since Mother had last seen K.H. A guardian ad litem was appointed, and Mother was granted supervised visitation. However, the visitation – opposed by Guardians, K.H., and K.H.'s therapist – did not take place.

On February 5, 2010, the Guardians petitioned to adopt K.H.; Mother contested the adoption. The parties agreed to a consolidated hearing on the pending petitions for termination of guardianship and for adoption. On December 8, 2010 and on April 20, 2011, the trial court heard evidence. During her testimony, Mother withdrew her request to terminate the guardianship, instead requesting visitation. On February 27, 2012, the trial court entered a decree of adoption.

On March 12, 2012, Mother filed two pro-se motions in the trial court: a purported motion to appeal (requesting a change of venue, transfer to the Indiana Court of Appeals or "all other relief just and proper in the premise") and a "Second Renewed Motion for

Appointment of Counsel." (App. 71, 73.) Apparently treating the motions as a motion to correct error, the trial court set the matter for a hearing. On April 27, 2012, an evidentiary hearing was conducted. Although the trial court declined to set aside the adoption, thus implicitly denying the motion to correct error, the court appointed appellate counsel for Mother. On May 11, 2012, Mother filed a Notice of Appeal.

## Discussion and Decision

### Standard of Review

A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. Williamson v. Williamson, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005). Furthermore, when we review a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. In re Adoption of H.N.P.G., 878 N.E.2d 900, 903 (Ind. Ct. App. 2008), trans. denied. We do not reweigh the evidence but will examine the evidence most favorable to the court's decision together with reasonable inferences drawn therefrom in order to determine whether sufficient evidence exists to sustain the decision. Id. The trial court's decision is presumptively correct and it is the appellant's burden to overcome that presumption. Id.

We note that Guardians have not filed an appellee's brief. When the appellee fails to submit a brief, we need not undertake the appellee's burden of responding to arguments that are advanced for reversal by the appellant. Hamiter v. Torrence, 717 N.E.2d 1249, 1252 (Ind. Ct. App. 1999). Rather, we may reverse the trial court if the appellant makes a prima

3

facie case of error. Id. "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." Id. Still, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. Mikel v. Johnston, 907 N.E.2d 547, 550 n.3 (Ind. Ct. App. 2009).

Analysis

Mother argues that the trial court erred in determining that her consent to K.H.'s adoption was not required. Indiana Code Section 31-19-11-1 provides that the probate court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given."

The Guardians alleged that Mother's consent was unnecessary pursuant to Indiana Code Section 31-19-9-8(a), which provides that consent to adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>     (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>     (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Because Mother contested the adoption, Guardians as the petitioners were required to prove by clear and convincing evidence that Mother's consent was not required. In re Adoption of D.C., 928 N.E.2d 602, 606 (Ind. Ct. App. 2010), trans. denied; In re Adoption of M.A.S., 815 N.E.2d 216, 219 (Ind. Ct. App. 2004). The provisions of Indiana Code Section 31-19-9-8(a) are disjunctive; as such, either provides independent grounds for dispensing with parental

4

consent. Id. Regardless of which provision is relied upon, adoption is to be granted only if it is in the best interests of the child. Ind. Code § 31-19-11-1(a).

Mother concedes that she did not have significant contact with K.H. over the years and has not provided for her support. However, Mother maintains that the Guardians thwarted her efforts to contact K.H. and that "there is only the barest evidence that [Mother] even had the ability to provide monetary support for K.H. from her employment." (Appellant's Br. at 7.)

Efforts of a custodian to hamper or thwart communication between a parent and child are relevant in determining the ability to communicate. In re Adoption of T.W., 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006). Mother correctly claims that, after 2005, she could not contact K.H. because of protective orders prohibiting such. Too, the record is replete with evidence that Mother's sporadic attempts to contact K.H. were rebuffed by Guardians. However, the statute prescribing the circumstances under which a parent need not give consent to adoption is written in the disjunctive, contemplating either a prolonged and unjustified failure to communicate or knowing failure to support the child when able to do so.

For approximately fourteen years prior to the adoption decree, Guardians supported K.H. without financial assistance from Mother. As Mother points out, she had not been court-ordered to pay child support for K.H. But "it is well-settled that parents have a common law duty to support their children." Boone v. Boone, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010). Accordingly, the lack of a court order on support did not relieve Mother of that obligation. See In re Adoption of M.B., 944 N.E.2d 73, 77 (Ind. Ct. App. 2011).

5

Mother testified that she had worked as a certified nurse's aide for three years, earning an hourly wage of $8.50. She had recently obtained employment paying $10.00 per hour. Nonetheless, a mere showing that a parent has a regular income, standing alone, is not sufficient to indicate parental ability to provide support. In re Adoption of N.W., 933 N.E.2d 909, 913 (Ind. Ct. App. 2010), adopted on transfer, 941 N.E.2d 1042 (Ind. 2011).

However, the guardian ad litem testified that Mother had been able to obtain a house[1] and was "involved in a steady relationship with an individual who has a steady job." (Tr. 113.) Mother also testified that her fiancé had provided for her living expenses for several years prior to her employment. Ultimately, Mother acknowledged that she had, "at least since 2008," sufficient funds to help with supporting her daughter but had not provided support. (Tr. 256.) The testimony is sufficient to show, by clear and convincing evidence, that Mother had disposable income but knowingly failed to support K.H.

Mother contends that the evidence of her financial ability to support K.H. is sparse and believes it unfair to expect her to support a child with whom she did not have amicable visitation. In essence, Mother urges that we consider evidence that does not favor the trial court's decision, reweigh the evidence, assess the credibility of the witnesses, and reach a conclusion other than that reached by the trial court. This is contrary to the appropriate standard of review.

---

[1] The two-bedroom, one-bath house had been provided by the employer of Mother's fiancé, for five or six years before the final hearing.

The Guardians met their burden of showing that Mother's consent to adoption was not required. Furthermore, Mother develops no separate argument concerning K.H.'s best interests.

Affirmed.

VAIDIK, J., and BROWN, J., concur.